[Civ. No. 14490.   First Dist., Div. Two.   Jan. 15, 1951.]

EARLE W. RUSSELL, Appellant, v. A. ANDERSEN et al., Respondents.

Bardin & Cunningham for Appellant.

Donald L. Grunsky for Respondents.

SCHOTTKY, J. pro tem.—On July 3, 1948, plaintiff was operating an automobile in a southerly direction on U. S. 101 in Monterey County and defendant Patton was operating a Chevrolet panel truck owned by defendants Andersen in a northerly direction.   Each party was the sole occupant of

his respective vehicle. As a result of a collision between the said automobile and truck plaintiff sued all of said defendants for personal injuries and defendant Patton filed a cross-complaint against plaintiff for personal injuries. Thereafter plaintiff dismissed as to defendants Andersen and issue was joined solely between plaintiff and defendant Patton.

After the accident both cars came to rest in the southbound lane and both cars were pointed south. The Patton car had its left rear corner about four feet west of the center line, and there was a pile of debris in the southbound lane directly behind the Patton car. There were deep scars, beginning on the west edge of the southbound paved portion of the highway, extending approximately 30 feet in a southwesterly direction and terminating under the broken knee-action of the left front wheel of the Russell car, which had come to rest beyond the west edge of the shoulder of the southbound lane.

No other gouge or skid marks, or debris, were found on the southbound lane, and no gouge or skid marks, or debris, were found at all on the east, or northbound, lane.

Upon the trial plaintiff called defendant under section 2055, Code of Civil Procedure, and defendant testified as to his version of how the collision occurred. Plaintiff also called witnesses Larson and Betts, highway patrol officers who went to the scene after the accident occurred. Plaintiff himself testified but it seems quite clear from the record, as stated a number of times during the trial by counsel for defendant, that he had no recollection of how the accident occurred. The only other witnesses called by plaintiff were the doctor who testified to the extent of the plaintiff's injuries and a medical technologist.

Defendant called two witnesses besides himself, one being an asserted eyewitness and the other testifying how plaintiff was operating his automobile a few miles north of where the collision occurred.

The jury rendered a verdict that neither party recover against the other. Plaintiff's motion for a new trial was denied and this appeal is from the judgment in favor of defendant.

The principal ground urged by plaintiff and appellant for a reversal of the judgment is that the court erred in refusing to give the following instruction offered by him:

''The presumption is that every man takes ordinary care of his own concerns and the presumption in this case is that

the plaintiff exercised ordinary care and diligence from all the circumstances of the case—his character and habits and natural instinct of self-preservation. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence.''

Appellant states that the preliminary question to be answered on this appeal is:

''In a negligence action for personal injuries, where a plaintiff by reason of loss of memory is unable to testify respecting his conduct at or immediately before the time of the accident, and produces no witnesses who testify to such facts, is he entitled to the benefit of the disputable presumption that he was exercising due care?''

Respondent, however, does not agree that the preliminary question on appeal is as stated by appellant but states that such preliminary question should be:

''In a negligence action for personal injuries, where a plaintiff testifies respecting his conduct at and immediately before the time of the accident, is he entitled to the benefit of the disputable presumption that he was exercising due care?''

It is therefore necessary at the outset to determine whether or not appellant, by reason of loss of memory, was unable to testify respecting his conduct at and immediately before the time of the accident. It is apparent that as to this question respondent is taking an entirely different position upon this appeal than he did at the trial for the record shows that upon his motion for a nonsuit respondent's counsel stated: ''There is no evidence by plaintiff's own testimony as to how the accident happened . . . I think that the plaintiff in clarifying his own testimony made it obvious that he remembered nothing of the accident or the circumstances of it . . . The only evidence which has been introduced at all as to what happened in this accident was the testimony of the defendant having been called under 2055.''

And during the cross-examination of appellant by respondent's counsel the following occurred:

''Q. Now, as to how the accident happened, you have testified if I am quoting you correctly, that you don't recollect very well just how the accident happened? A. I don't.

''Q. Now, at the time——

''The Court: According to his testimony, he knows nothing about the accident.

"Mr. Grunsky: Excuse me, Your Honor?

"The Court: According to his testimony, he knows nothing about the accident so maybe if you cross examine him he may eventually know, but as the record stands, he knows nothing about it.

"Mr. Grunsky: Just so there is no misunderstanding that that was his testimony, Your Honor."

"Q. In fairness to you, you have no independent recollection of this particular day at this particular place? A. No.

"Q. That you were on your own side of the road? A. None.

"Q. And you are positive of that? A. I have no recollection.

"Q. And that goes to where you were or how the accident happened? A. That's right."

In view of the fact that the record fully supports the statements of counsel for respondent and the trial judge that the testimony of appellant showed that he suffered a loss of memory as to how the accident happened, it is difficult to understand how respondent can argue seriously upon this appeal that appellant "was well able to and did testify to the material facts of the accident and was not suffering from a loss of memory."

We believe, therefore, that we must determine the question of whether or not appellant was entitled to the benefit of the disputable presumption that he was exercising due care upon the basis that the record shows that appellant by reason of loss of memory was unable to testify respecting his conduct at or immediately before the time of the accident and produced no witnesses to testify to such facts.

The presumption here under consideration is set forth in subdivision 4 of section 1963 of the Code of Civil Procedure as follows:

"All other presumptions are satisfactory if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: . . . 4. That a person takes ordinary care of his own concerns."

The foregoing presumption was considered in the now famous case of *Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 P. 529]. That was a case arising out of the death of one Smellie when the truck in which he was riding, which was being operated by one Ireland, was struck at a railroad crossing in the city of Madera by one of defendant company's trains. One defense was contributory negligence of the de-

ceased. Plaintiff put Ireland, also a defendant, upon the witness stand under section 2055, and upon cross-examination by counsel for his codefendant, Southern Pacific Company, Ireland testified that the deceased said, just before going onto the track, "It's all clear, let's go." This evidence was not contradicted by any witness. The trial judge directed a verdict in favor of defendants. Upon appeal our Supreme Court reversed the judgment, and in the course of its opinion said at page 549:

"The question is, therefore, directly raised and presented as to whether this presumption, that the deceased exercised due care for his safety, has been overcome and dispelled as a matter of law by the testimony of Ireland. That a presumption is evidence and may in certain cases outweigh positive evidence adduced against it has long been the settled law of this state. (*People* v. *Milner*, 122 Cal. 171 [54 P. 833]; *Sarraille* v. *Calmon*, 142 Cal. 651 [76 P. 497]; *People* v. *Siemsen*, 153 Cal. 387 [95 P. 863]; *Pabst* v. *Shear*, 172 Cal. 239 [156 P. 466]; *Thompson* v. *Davis*, 172 Cal. 491 [157 P. 595]; *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6 [171 P. 1066]; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20 [204 P. 393]; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 P. 269]; *Pacific Portland Cement Co.* v. *Reïnecke*, 30 Cal.App. 501 [158 P. 1041]; *Grantham* v. *Ordway*, 40 Cal.App. 758 [182 P. 73].)

" 'A few quotations from the foregoing authorities will, we think remove all doubt from this question. In *People* v. *Milner, supra*, at page 179, the court said, "Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remained with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption." In *Sarraille* v. *Calmon, supra*, at page 655, the court said, "The presumption of nonpayment arising from possession of uncanceled notes, admittedly executed by defendant, was evidence that they were not paid, and produced a conflict with the evidence of defendant's witnesses." In *People* v. *Siemsen, supra*, at page 390, we find the following language: "But the court, in determining whether or not to accept Mr. Greeley's testimony, had a right to consider the presumptions raised by law. One of these in that 'official duty has been regularly performed'; another, that 'a writing is truly dated' . . . these presump-

tions, while disputable, are in themselves evidence (citing authorities), and will support a finding made in accordance with them, even though there be evidence to the contrary.'' In *Pabst* v. *Shearer, supra,* at page 242, this court stated the rule as follows: ''It must be remembered that a presumption declared by statute, although disputable, is itself evidence, and that is for the trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose.'' In *Thompson* v. *Davis, supra,* at page 493, this court again said: ''Under the express provisions of section 164 of the Civil Code, as that section has read since the year 1897, such deed to the wife raised the presumption that the title was thereby vested in her as her separate property. This presumption is, to be sure, not conclusive. 'It may be overcome by evidence sufficient to satisfy the court that the property in question, although conveyed to the wife, was, in fact, community property.' (Citing authority.) But the presumption, 'although disputable, is itself evidence, and . . . it is for the trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose'.'' In *Olsen* v. *Standard Oil Co., supra,* at page 24, this court sustained an instruction in the following words: ''The presumption is that every man obeys the law, and the presumption in this case is that the plaintiff was traveling at a lawful rate of speed and on the proper side of the highway at all times. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence.'' In *Pacific Portland Cement Co.* v. *Reinecke, supra,* at page 504, we find the following language: ''The presumptive evidence of the time of the making of the endorsement and guaranty and the consideration therefor, may be resorted to in aid of the findings, even though it be assumed, as counsel for the defendant contends, that it stands alone and was opposed by direct evidence to the contrary. The general rule that, as against a proved fact, or a fact admitted, a disputable presumption has no weight, is subject to the exception that where, as in the present case, as endeavor is made to establish a fact contrary to the presumption, the fact in dispute still remains to be determined upon a consideration of all of the evidence, including the presumption.'' In *Mar Shee* v. *Maryland Assur. Corp., supra,* at page 7, this court has again said: ''There seems to be some confusion in the

decisions of this state with respect to the extent to which, under various circumstances, presumptions of law are to be regarded as evidence of facts. The code expressly declares them to be evidence (Code Civ. Proc., secs. 1947, 1963), and admonishes the trial judge to instruct the jury on all proper occasions 'that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a . . . presumption.' (Code Civ. Proc., sec. 2061, subd. 2). Among the decisions of this court recognizing and applying the foregoing rule may be mentioned the following: *Sarraille* v. *Calmon*, 142 Cal. 651 [76 P. 497] ; *Adams* v. *Hopkins*, 144 Cal. 19 [77 P. 712] ; *Moore* v. *Gould*, 151 Cal. 723 [91 P. 616] ; *People* v. *Seimsen*, 153 Cal. 378, 390 [95 P. 863] ; *Freese* v. *Hibernia Sav. etc. Soc.*, 139 Cal. 392 [73 P. 172] ; *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6 [171 P. 1066].' "

The court went on to hold that the plaintiff was entitled to benefit of said presumption and also that the testimony of a defendant called as a witness by plaintiff under Code of Civil Procedure, section 2055, was not to be regarded as evidence of the plaintiff and did not as a matter of law dispel or overcome the presumption that the deceased exercised due care for his own concern. The court said at page 559:

" 'Our conclusion, therefore, is that the testimony of a witness called under section 2055 of the Code of Civil Procedure is not, when weighing it against a presumption, to be considered, nor is it, really, evidence of the party calling such witness, and that the evidence thus produced does not dispel a presumption contrary thereto, but in favor of the party calling such adverse witness. This testimony is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury. When the action is before a jury, however, the duty of weighing this evidence is with the jury and not with the court upon a motion for a nonsuit or directed verdict.' "

In *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590], the court held that the principle enunciated in the Smellie case applied to a death case when eyewitnesses testified for each side. In that case plaintiffs were suing for damages for the death of their son who was killed in an automobile accident involving a car driven by himself and a truck owned and operated by the defendants. Plaintiff produced three eyewitnesses to the accident while the defendant driver was the

only eyewitness for the defense. In view of the fact that the plaintiff had produced eyewitnesses to the accident defendants upon appeal complained of the trial court's giving the following instruction:

". . . 'The presumption is that every man obeys the law, and the presumption in this case is that the plaintiffs' son, Morris E. Westberg, was travelling at a lawful rate of speed, and on the proper side of the highway at all times. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until, and unless it is overcome by satisfactory evidence.' "

In holding that there was no error in giving said instruction the court said at page 364:

"This instruction is in almost the precise words of the instruction set out in the opinion in the case of *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 25 [204 P. 393], which was approved by this court in the following language:

" 'The defendant claims that this is erroneous. We think it is correct. The rule that contributory negligence of the plaintiff must be alleged in the answer, or it will not be available to the defendant as a defense, is based on this presumption. So, also, is the rule that the burden of proving it by a preponderance of the evidence is on the defendant. The code expressly declares that this presumption is disputable, that it "may be controverted by other evidence," and that unless so controverted the jury is bound to find in accordance with it. (Code Civ. Proc. secs. 1961, 1963, subds. 1, 33.) The instruction is, therefore, strictly in accordance with the code on the subject.'

"In later cases we expressly approved our decision in that case (*Rogers* v. *Interstate Transit Co.*, 212 Cal 36 [297 P. 884] ; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529] ; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 P. 269]), and it has been followed by the District Court of Appeal in *Ramsey* v. *Pasini*, 108 Cal.App. 527, 529 [291 P. 884], and *DeLannoy* v. *Grammatikos*, 126 Cal.App. 79 [14 P.2d 542].)

"From these decisions, and others of this court which might be cited, the rule is firmly established in this state that a presumption is evidence and is sufficient to support a verdict of a jury or a finding of the court, unless overcome by satisfactory evidence.

"We think it well to state here that in our opinion there is a substantial difference in the situation before a court where the question of the plaintiff's negligence is in issue,

and both plaintiff and his witnesses testified to all his acts and conduct at the time of his alleged negligence, from a situation where the acts and conduct of a decedent are the issues before the court. In the first instance, all possible facts both in favor of and against the alleged negligence of the plaintiff are before the court, and it is difficult for us to perceive how any presumption as to his conduct can add to or detract from this evidence. Surely if this evidence conclusively supports the claim that he was negligent, then, according to our decisions cited above, the presumption as to his conduct has been dispelled. On the other hand, if the plaintiff has testified respecting his acts and conduct, and his testimony and that of his witnesses showed that he used ordinary care for his safety, an instruction to that effect would not be of any assistance to him; but if such evidence did not clearly and unmistakably clear him of the charge of negligence, then an instruction which would place his testimony in a more favorable light than it would be without such instruction would seem to be uncalled for, if not improper. In such case the giving of any instruction as to the presumption of plaintiff's conduct would seem to be of doubtful propriety. It has, however, been held that the giving of such an instruction under the circumstances just related was not prejudicial. (*Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128]; *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36, 38, 39 [297 P. 884].) But in the other situation, where the acts and conduct of a deceased person are the subject of inquiry, and the testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, unless such testimony meets the requirement of the rule in the Mar Shee case, and other cases decided by this court following the Mar Shee case, an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is not only proper but this court in an unbroken line of decisions, has sustained the giving of such an instruction. (*Ellison* v. *Lang Transp. Co.,* 12 Cal.2d 355 [84 P.2d 510].)''

The rule of the Smellie case and of *Westberg* v. *Willde* has been applied in a number of later cases where plaintiff was not killed in the accident but suffered loss of memory as a result thereof. In the case of *Scott* v. *Sheedy,* 39 Cal.App. 2d 96 [102 P.2d 575], (hearing denied), the exact instruction offered and refused in the instant case was approved. The court said at page 99:

''The court instructed the jury as follows: 'The presump-

tion is that every man takes ordinary care of his own concerns, and the presumption in this case is that the plaintiff exercised ordinary care and diligence from all the circumstances of the case—his character and habits and natural instinct of self preservation. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence.'

''Similar instructions have been the pivotal point or crucial factor in the determination of the merits of many appeals, and while the position of appellants finds support in decisions heretofore rendered by this and other appellate courts, the point at issue seems to have been decided by the Supreme Court adversely to appellants' position in the recent case of *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590], and as an intermediate appellate court we are bound by the holding therein.

''In the instant case the essential difference factually is that the plaintiff did not die as a result of the accident but suffered a brain injury. The following appears in the record: 'Now, Mr. Scott, you need not answer it right away, you may consider it a little while, but is it your testimony now that you can't tell us anything about how this truck came to this opening? A. Yes, sir.' Under the circumstances, in view of the reason for the rule as stated in the Westberg case, we feel it can make no difference whether the injured party dies or is incapacitated by loss of all memory of the circumstances of the accident, the result of brain injury from the collision. In other words, notwithstanding the evidence from other witnesses, 'all possible facts both in favor of and against the alleged negligence of the plaintiff' (*Westberg* v. *Willde, supra*) were not before the court. In this case no witness could have testified that plaintiff saw the danger. A witness might place him in a position from which an inference might be drawn that he could see or realize danger, but that would not be sufficient if a reasonable inference otherwise could be drawn. If the acts and conduct of an incapacitated party must be testified to by other witnesses, we conclude that the test given in the Westberg case and in *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 P. 269], is proper. In the Mar Shee case, the court (p. 9) said: '. . . we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford

no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.' ''

In *Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334 [108 P.2d 947] (hearing denied) the court said at page 339:

''It is appellant's contention that when he, because of loss of memory, is unable to testify respecting his conduct immediately prior to the accident, he is presumed to have exercised reasonable and ordinary care for his own safety, and in support of the applicability of this rule to the facts in the instant case he cites *Borum* v. *Graham*, 4 Cal.App.2d 331 [40 P.2d 866], *Whicker* v. *Crescent Auto Co.*, 20 Cal.App.2d 240 [66 P.2d 749], *Parker* v. *Manchester Hotel Co.*, 29 Cal. App.2d 446 [85 P.2d 152], *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529], *Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 P. 269], and *Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575], where the District Court of Appeal extended the rule announced in the Mar Shee and Smellie cases to a case where loss of memory was the direct result of a brain injury sustained in the collision. The justification for the rule there announced was based upon the fact that the injured person died and therefore could not testify. In extending the rule in *Scott* v. *Sheedy, supra,* the court predicated its opinion upon the same principle, that is, that the person was deprived of his testimony because of the injuries received in the accident. In the instant case there appears to be sufficient evidence, if believed by the jury, to justify the conclusion, if drawn by the jury, that the appellant was deprived of his memory because of a head injury. If the jury so concluded, appellant would then be entitled to the benefit of the presumption.''

And in *Simon* v. *City & County of San Francisco*, 79 Cal. App.2d 590 [180 P.2d 393] (hearing denied) the court said at page 598:

''It is now well settled in this state that where a plaintiff by reason of loss of memory is unable to testify respecting his conduct at and immediately before the time of the accident, and produces no witnesses who testify to such facts, he is entitled to the benefit of the presumption that he was exercising due care. This presumption is itself evidence sufficient to create a conflict with the evidence produced by defendant, and requires that the issue of contributory negligence be submitted to the jury. Evidence produced under section 2055

of the Code of Civil Procedure is adverse and cannot be weighed, as a matter of law, against the presumption. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 P. 529]; *Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334 [108 P.2d 947]; *McNear* v. *Pacific Greyhound Lines*, 63 Cal.App.2d 11 [146 P.2d 34]; *Satariano* v. *Sleight*, 54 Cal.App.2d 278 [129 P.2d 35]; *Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575].)''

See, also, *Douglas* v. *Hoff*, 82 Cal.App.2d 82, 85 [185 P.2d 607].

Respondent in reply quotes from *Roselle* v. *Beach*, 51 Cal. App.2d 579 where the court said at page 583 [125 P.2d 77]:

''Where, as in the case of Roselle, a participant in an accident is dead or, for any other reason, is unable to give an account of what occurred and his side of the case is not fully covered by the testimony of witnesses called on his behalf, it is proper to give such an instruction as was given on behalf of the plaintiff. (*Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355 [84 P.2d 510]; *Schulman* v. *Los Angeles Ry. Corp.*, 44 Cal.App. 2d 122 [111 P.2d 924]; *Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575].) But if, as in the case of Beach, a participant testifies to his own actions or has witnesses who explain them, even though there is a presumption of law that 'a person takes ordinary care of his own concerns' (Code Civ. Proc., § 1963, subd. 4), he should not be given the benefit of the presumption because it can have no weight. For this reason the giving of such an instruction in such a case is uniformly held to be error unless it is made applicable to both of the parties, and in certain instances judgments have been reversed for this reason.''

Respondent also cited *Speck* v. *Sarver*, 20 Cal.2d 585, in which the court said at page 587 [128 P.2d 16]:

''The rebuttable presumption that a person takes ordinary care of his own concerns is declared in section 1963 (4) of the Code of Civil Procedure. An instruction as to the existence of this presumption may properly be given to the jury in certain situations. (See *Westberg* v. *Willde*, 14 Cal. 2d 360 [94 P.2d 590]; *Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355 [84 P.2d 510]; *Downing* v. *Southern Pacific Co.*, 15 Cal.App.2d 246 [59 P.2d 578].) Such an instruction, however, should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. (See cases last cited and also *Mundy* v. *Marshall*, 8 Cal.2d 294 [65

P.2d 65]; *Paulsen* v. *McDuffie*, 4 Cal.2d 111 [47 P.2d 709]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884].) In the instant case the plaintiffs testified in regard to the events leading up to the collision. Plaintiff Mathew Speck, the driver, explained all of his actions. Under such circumstances there was no room for the presumption in this case.''

Respondent also cited *Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742, where the court said at page 749 [135 P.2d 573]:

''From apparently conflicting opinions of appellate courts of California, the following rules may be adduced:

''(1) It is error for the trial court to give an instruction such as that set forth above where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time of the accident (*Speck* v. *Sarver*, 20 Cal.2d 585, 587, 588 [128 P.2d 16]; *Campbell* v. *City of Los Angeles*, 28 Cal.App.2d 490, 491 [82 P.2d 720].)''.

None of the three last cited cases support respondent's contention that the offered instruction was properly refused because in the instant case the facts concerning the happening of the collision were not fully covered by plaintiff's witnesses. On the contrary, no witnesses who saw the accident were produced by plaintiff and in view of the fact that there was ample evidence to justify the conclusion that appellant was deprived of his memory because of injuries received in the accident, we believe that, under the authorities hereinbefore set forth, appellant was entitled to the benefit of the presumption and that the trial court erred in refusing to give such an instruction.

It is not necessary to discuss the question of whether, upon the record in the instant case a presumption of due care was dispelled by facts ''wholly irreconcilable'' with the presumption, because respondent states quite frankly in his brief that he makes no such contention but contends ''rather that plaintiff having testified as to the material facts of the accident was never entitled to a presumption of due care in the first place,'' a rather surprising contention in view of the fact that counsel for respondent first in the presence of the jury, and, later, upon a motion for a nonsuit, stated and contended that it was obvious that appellant ''remembered nothing of the accident or the circumstances of it.''

Respondent also contends that the essential elements of an instruction on the disputable presumption of the exer-

cising of due care are contained in the general instructions given by the court defining presumptions and inferences and stating that among disputable presumptions are these: ''That a person is innocent of crime or wrong.'' ''That things have happened according to the ordinary course of nature and the ordinary habits of life.'' (Code Civ. Proc., § 1963, subds. 1, 28.)

The instructions quoted by respondent are, of course, stock instructions given in every civil case and are taken from the Code of Civil Procedure. Mere general instructions as to the nature and effect of presumptions and inferences can hardly be regarded as a sufficient substitute for a specific instruction on the presumption that a person takes ordinary care of his own concerns. (Code Civ. Proc., § 1963, subd. 4.)

■ Respondent's final contention is that even if it would have been proper for the trial court to have given the offered instruction, it was not reversible error to have refused to give it. Respondent, of course, relies upon section 4½ of article VI of our state Constitution.

As was said in *Bieser* v. *Davies*, 119 Cal.App. 659 at page 664 [7 P.2d 388]:

''In a personal injury case the plaintiff is entitled to a jury trial as a matter of right under the Constitution and if the jury is misdirected we think this takes away a substantial right, and unless the erroneous instruction was ⸳cured by other instructions, or the verdict rendered was the only verdict which the evidence would support, it would of course be prejudicial (*Mahoney* v. *Atchison, T. & S. F. Ry. Co.*, 101 Cal.App. 652 [281 P. 1108].) With reference to the evidence in the case, we believe it is apparent from the evidence set forth herein that a verdict for either the plaintiff or the defendant would be supported by the evidence.''

And in *Herbert* v. *Lankershim*, 9 Cal.2d 409, our Supreme Court said at page 476 [71 P.2d 220]:

''In such cases the provisions of Article VI, § 4½ of the Constitution cannot be involved in aid of the affirmance of the judgment, unless it can be said that the justice of the case preponderated so heavily on the side of the prevailing party that none of such errors did or could have contributed to or resulted in a miscarriage of justice. Construing Article VI, Section 4½ of the Constitution, this court, in *People* v. *Davis*, 210 Cal. 540, 556 [293 P. 32], said: 'The phrase ''miscarriage of justice'' used as descriptive of that condition of a cause which justifies the reversal of a judgment, has

no hard and fast definition. It seems assured, however, that where errors have been committed, and where the appellate court finds that upon the record it is seriously doubtful that without such errors the defendant would have been convicted, then it may well be that errors which otherwise would not be considered to be seriously prejudicial, will require a reversal.' The rule applies to civil as well as to criminal cases.''

In the instant case plaintiff and appellant produced evidence tending to show that the accident occurred on appellant's side of the highway and that respondent's car had come to rest with its left rear corner about 4 feet west of the center line, and there was a pile of debris in the southbound lane directly behind respondent's car, which had obviously dropped from respondent's car on the impact. There were deep scars, beginning on the west edge of the southbound paved portion of the highway, extending approximately 30 feet in a southwesterly direction and terminating under the broken knee-action of the left front wheel of appellant's car, which had come to rest beyond the west edge of the shoulder of the southbound lane. No other gouge or skid marks, or debris, were found on the southbound lane, and no gouge or skid marks, or debris, were found at all on the east, or northbound lane.

Respondent produced evidence tending to show that appellant had swung into respondent's lane, and that then both cars had cut back to appellant's lane where the crash occurred. A careful reading of the entire record convinces us that a verdict for either party would find support in the evidence. In fact the jury did find for respondent on appellant's complaint and for appellant on respondent's cross-complaint. We have already held that the court erred in refusing to give the offered instruction as to the presumption of due care, and we are convinced that upon the entire record in this case, the depriving of appellant of the benefit of such presumption was prejudicial error requiring a reversal of the judgment. Applicable to the instant case is the language of our Supreme Court in the recent case of *Satterlee* v. *Orange Glen School Dist.*, 29 Cal.2d 581 at p. 593 [177 P.2d 279] :

''For these reasons the adoption by the trial court of the standard of care imposed by a statute or ordinance becomes an important factor in imposing liability. The instruction given by the court on its own motion had the effect of minimizing, if not completely negativing, the code provision. It was, therefore, erroneous and considering the direct con-

flict in the evidence, constituted 'a miscarriage of justice' within the meaning of article VI, section 4½ of the California. Constitution.''

The judgment is reversed.

Nourse, P. J., and Dooling, J., concurred.